D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA*
*Collective Plaintiffs, and proposed Class*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
CARLOS LOPEZ, a/k/a NERI LOPEZ,
WILLIAM RAMONES, and JORGE
MOLINA, on behalf of themselves and others
similarly situated,

                Plaintiffs,

   v.

P E C GROUP LTD, d/b/a PEPOLINO
RISTORANTE ITALIANO (a/k/a
PEPOLINO), PATRIZIO SIDDU, and ENZO
PEZONE,

                Defendants.
------------------------------------------------------x

COMPLAINT

FLSA COLLECTIVE ACTION AND RULE
23 CLASS ACTION

DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

## JURISDICTION AND VENUE

1.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.      All Defendants are hereinafter collectively referred to as "Defendants."

4.      Defendant P E C Group LTD d/b/a Pepolino Ristorante Italiano ("Pepolino") is a New York limited liability company.

5.      Defendant Pepolino owns and operates the restaurant, Pepolino, located at 281 West Broadway, New York, NY 10013.

6.      Pepolino has annual gross sales in excess of $500,000.

7.      Defendants Patrizio Siddu ("Siddu") and Enzo Pezone ("Pezone") exercise control over the restaurant's day to day operations.

8.      Upon information and belief, Defendants Siddu and Pezone exercise sufficient control of the restaurant's day to day operations to be considered employers of Plaintiffs and those similarly situated under the FLSA and New York Labor Law.

9.      Defendants Siddu and Pezone hire and fire employees at the restaurant.

10.     Defendants Siddu and Pezone supervise and control employees' schedules at the restaurant.

11.     Defendants Siddu and Pezone supervise and control employees' work conditions at the restaurant.

12.     Defendants Siddu and Pezone determine employees' rates and methods of pay at the restaurant.

13.     To the extent that employment records are kept for employees, Defendants Siddu and Pezone maintain and have control over those records.

14.     All Defendants are hereinafter collectively referred to as "Defendants."

15.     Plaintiff Carlos Lopez was employed by Defendants as a tipped food-service employee from approximately 2006 until May 2021.

16.     Plaintiff William Ramones was employed by Defendants as a server from approximately April 2017 until April 2018.

17.     Plaintiff Jorge Molina was employed by Defendants as a server from approximately July 2017 to April 2018.

18.     All Plaintiffs are hereinafter collectively referred to as "Plaintiffs."

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.     Plaintiffs bring the First Claim for Relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all tipped employees employed by Defendants at Pepolino on or after the date that is three years before the filing of the Original Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

20.     At all relevant times, Plaintiff Lopez and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them the legally required overtime wage for all hours worked. The claims of Plaintiff Lopez stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiffs bring the state law Claims for Relief (Second, Third, Fourth, Fifth, and Sixth Claims for Relief) pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all tipped employees employed by Defendants at Pepolino on or after the date that is six years before the filing of the Original Complaint in this case as defined herein (the "Class Period").

23.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

24.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than fifty (50) members of the Class.

25.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member

of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, overtime and spread of hours compensation, illegally retaining tips.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

27.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of

separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

29.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)     Whether Defendants employed Plaintiffs and the Class members within the meaning of New York law.

b)     At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work.

c)     Whether Defendants paid Plaintiffs and the Class members the minimum wage for all hours worked.

d)     Whether Defendants properly compensated Plaintiffs and Class members for overtime.

e)      Whether Defendants illegally retained portions of Plaintiffs' tips and the Class members' tips.

f)      Whether Defendants illegally distributed Plaintiffs' and the Class members' tips to Defendants' agents and/or non-service employees

g)      Whether Defendants paid employees New York's "spread of hours" premium when their workdays exceeded 10 hours.

h)      Whether Defendants provided Plaintiffs and Class members with the proper notices.

## FACTS

### Wage and Hour Claims

30.     Plaintiffs' Consent to Sue form is attached as Exhibit A.

31.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

32.     Defendants knew that the nonpayment of minimum wage, nonpayment of overtime, and illegal deductions from the compensation of Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class would economically injure them and violated federal and state laws.

33.     Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class often worked in excess of forty hours per workweek.

34.     For example, Plaintiffs almost always worked at least five days per week.  On many of those days, Plaintiffs were often scheduled to and in fact did work several double shifts (lunch and dinner).  On the remaining days, Plaintiffs worked just a dinner or lunch shift.

35.     A double shift typically entailed Plaintiffs working for at least 12 hours, as it generally commenced around 10:30 a.m. and ended close to midnight, with just a short break in between.

36.     Dinner shifts typically entailed at least 7 to 8 hours of work, as the shifts generally commenced at approximately 4:00 p.m. and concluded at 11 p.m. or midnight.

37.     Thus, Plaintiffs often worked over 40 hours per week.

38.     Nevertheless, Defendants regularly altered Plaintiffs' time-cards on these weeks and paid them for less than 40 hours.

39.     Defendants paid Plaintiffs and Class members bi-weekly.

40.     On many occasions Plaintiffs worked at Pepolino for more than 90 hours in the two week pay cycles however they frequently only paid for less than 80 hours of work.

41.     For the hours Defendants paid Plaintiffs and Class members, Defendants paid them pursuant to the New York food service workers minimum wage.  This amount was at all times less than the relevant New York minimum wage.

42.     However, Defendants were not entitled to use a tip credit to pay Plaintiffs and Class members less than the minimum wage, because (a) they did not give Plaintiffs proper notices of the tip credit, and (b) Defendants required Plaintiffs and Class members to spend more than 20% of their shifts performing non-tipped work.

43.     Defendants did not give Plaintiffs and Class members proper written notices of the tip credit (a) upon hire, and/or (b) upon each occasion that these employees' hourly wage rates were altered, as required by the New York State Hospitality Wage Order.

44.     Defendants also required Plaintiffs and Class members to spend more than 2 hours and/or more than 20% of their shifts on sidework.

45.     The sidework consisted of, among other things, organizing cutlery and napkins, setting up the bar, and setting up or disassembling the dining room.

46.     Specifically, when Plaintiffs worked lunch shifts, they typically worked from 10:30 a.m. until 4:00 p.m.  However, the restaurant did not open for service until 12:00 p.m.  Plaintiffs were required to spend the first one and a half hours of their over five hour shifts performing non-tipped sidework, such as setting up and arranging the dining room.  On many occasions, Plaintiffs also had to perform side work after the food-service portion of the lunch shift.

47.     When Plaintiffs worked lunch shifts, they were typically scheduled to work a double shift, *i.e.*, both a lunch shift and a dinner shift during the same day.  On these occasions, Plaintiffs were required to perform and additional 60 to 90 minutes of side work between the lunch and dinner shifts.

48.     This sidework consisted of, among other things, cleaning menus, refilling sugar and salt shakers; cleaning silverware and glassware, preparing tables for parties and folding napkins.

49.     Dinner service commenced at 5:00 p.m. and concluded between usually concluded between 11:00 p.m. and 12:30 a.m.

50.     On many occasions, Plaintiffs were required to perform 45-60 minutes of side work at the end of the dinner shifts as well.

51.     On the occasions that Defendants did pay employees for overtime worked, they frequently paid them below the statutorily required overtime rates.

52.     For example, on the occasions that Plaintiff Ramones was paid "overtime" in 2017, Defendants paid him $12.35 for each hour they paid him in excess of 80 in a two week period.

53.     However, in 2017, the New York State minimum wage was $11 and the tipped minimum wage was $7.5 with a credit of $3.50.

54.     Accordingly, even if Defendants were entitled to pay employees the tipped overtime rate, that was $13 an hour, not the $12.35 that Defendants paid.

55.     Defendants also retained and/or misappropriated to non-service workers portions of the Plaintiffs', FLSA Collective Plaintiffs', and Class members' tips.

56.     These mandatory tip pools included individuals that did not provide customer service, such as (a) individuals who performed supervisory duties and (b) individuals who were kitchen employees.

57.     Defendants knew that improperly forcing the Plaintiffs to share their tips with management and/or other non-service workers would economically injure Plaintiffs and violated federal and state laws.

58.     Specifically, Defendants assigned two waiters to act as managers when the owners of the restaurant were not on the premises.

59.     On many of these occasions, these managers would not wear the same uniforms as the other waiters but would instead wear business suits.

60.     When they worked as managers, these individuals had the authority to schedule employees, to send them home early from shifts, and to discipline them, if necessary.

61.     On many occasions, Plaintiffs witnessed these managers threatening employees that they would report them to the restaurant's owners if the employee did not follow the managers' instructions.

62.     Unlike waiters, the managers also had the authority to void or comp items on customers checks.

63.     On almost every dinner shift and many lunch shifts, Plaintiffs were also forced to share tips with an individual who was tasked with cleaning and polishing dishes in the kitchen.

64.     On almost every dinner shift and many lunch shifts, Plaintiffs were also forced to share tips with an individual who was tasked with organizing and expediting customers' food orders in the kitchen.

65.     The employees tasked with these polishing and expediting duties did not participate in customer service and were away from the view of customers during the entirety of the time that they performed their dishwashing/expediting duties.

66.     Finally, until approximately March 2020, Defendants took 3.5% out of Plaintiffs and Class members' credit card tips.

67.     Defendants claimed that these amounts were to cover the credit card transaction fees.

68.     Many of the credit cards that customers used to pay their check at Pepolino charged less than 3.5% as a transaction fee and thus defendants were simply pocketing the difference between 3.5% and the amount the credit card companies were actually charging.

69.     Plaintiffs' and the Class Members' workdays often consisted of double shifts which lasted longer than 10 hours.

70.     However, Defendants did not pay Plaintiffs and other Class Members' New York's "spread of hours" premium for every day in which they worked over 10 hours.

71.     Plaintiffs' and Class members' weekly pay statements did not contain accurate statements of their hours worked and did not indicate that Defendants were taking a credit against Plaintiffs' and Class members' wages for the tips they earned, in violation of NYLL § 195(3).

72.     Defendants never gave Plaintiffs and other Class Members a Notice and Acknowledgment of Pay Rate upon hire as required by NYLL § 195.

73.     Defendants committed the foregoing acts against Plaintiffs, the FLSA Collective Plaintiffs, and the Class Members.

**Discrimination Claims**

74.     Throughout Plaintiff Lopez's employment with Defendants, he and many of his coworkers were subjected to racial discrimination and intense emotional abuse by Defendant Pezone.

75.     Specifically, many of the employees at Pepolino were of Latin American decent.

76.     Defendants Pezone frequently and indiscriminately referred to many of these individuals as "Mexicans," even though he knew that many of them were not from Mexico.

77.     Defendant Pezone also frequently referred these employees as "Mexican" while attaching a pejorative to that description.

78.     For example, Pezone would say about Latin-American employees, "this Mexican is brutto."

79.     "Brutto" means ugly in Italian.

80.     Pezone would also make statements like: "this Mexican is stupid," "this Mexican is dirty," or "this Mexican is disgusting."

81.     Pezone would also say statements such as "this Mexican is a testa di cazzo" (which translates from Italian as "this Mexican is a dickhead").

82.     To be sure, Defendant Pezone made these statement about employees who were not only of Mexican decent with the direct intention of discriminating against and humiliating them because of their race.

83.     Defendants Pezone also frequently made these comments to Plaintiff Lopez directly.

84.     As a result of Defendants' intentional discrimination, Plaintiffs suffered, and continue to suffer, severe emotional distress, physical pain and suffering, damage to Plaintiffs' good names and reputations, lasting embarrassment, humiliation and anguish.

85.     Defendants discriminated against Plaintiffs in knowing or reckless disregard of their statutory rights to a workplace free of discrimination.

### FIRST CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*)
### (Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

86.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

87.     Throughout the statute of limitations period covered by these claims, Plaintiff Lopez and the FLSA Collective Plaintiff Lopez regularly worked in excess of forty (40) hours per workweek.

88.     At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff Lopez and the FLSA Collective Plaintiffs at one and one half times the greater of their regular rate or the full federal minimum wage for work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA and relevant regulations even though the Plaintiff Lopez and the FLSA Collective Plaintiffs were entitled to overtime.

89.     Plaintiff Lopez, on behalf of himself and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(New York State Minimum Wage Act, New York Labor Law § 650 et seq.;**
**N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.9)**
**(Brought By Plaintiffs on Behalf of Themselves and the Class)**

90.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

91.     Defendants knowingly failed to pay Plaintiffs and the Class members the full New York State minimum wage for all hours worked.

92.     Defendants' failure to pay Plaintiffs and members the Class the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

93.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## THIRD CLAIM FOR RELIEF
**(New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.***
**N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-1.4, 146-2.9)**
**(Brought By Plaintiffs on Behalf of Themselves and the Class)**

94.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

95.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

96.     Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the Class Members at the required overtime rates, one-and-one-half times the minimum wages for hours worked in excess of forty (40) hours per workweek.

97.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### FOURTH CLAIM FOR RELIEF
**(Illegal Deductions from Gratuities, N.Y. Lab. L. §§ 193, 196-d and 198-b)**
**(Brought By Plaintiffs on Behalf of Themselves and the Class)**

98.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

99.     Defendants willfully retained portions of Plaintiffs' and Class Members' tips.

100.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

### FIFTH CLAIM FOR RELIEF
**(New York Spread of Hours Provisions, N.Y. Lab. L. §§ 650 *et seq.***
**N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6)**
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

101.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

102.    Plaintiffs and the Class Members regularly had workdays that lasted more than ten (10) hours.

103.    Defendants willfully and intentionally failed to compensate Plaintiff and Class Members one hour's pay at the basic New York minimum hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

104.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount

to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## SIXTH CLAIM FOR RELIEF
### (New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)
### (Brought By Plaintiffs on Behalf of Themselves and the Class)

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

106.    Defendants did not provide Plaintiffs and members of the Class with the notices/wage statements required by N.Y. Lab. Law §§ 195(1) and 195(3).

107.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (New York State Late Payment of Wages Violations
### New York Minimum Wage Act, N.Y. Stat. § 190 et seq.)
### (Brought by Plaintiffs on Behalf of Themselves and the Class)

108.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

109.    At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the NYLL, § 190, et seq.  At all relevant times, Defendants have employed "employee[s]," including Plaintiffs.

110.    Prior to approximatively March 2020, Defendants did not pay Plaintiffs—who were manual laborers—on a weekly basis.

111.    Instead, Defendants issued paychecks to Plaintiffs on a bi-weekly basis.

112.    The aforesaid conduct of Defendants was knowing, intentional, and willful.

113.    By their aforesaid conduct, Defendants willfully violated the provisions of the NYLL regarding timely payment of wages, NYLL Art. 6 § 191, et seq.

114.    Plaintiffs are thereby entitled to recover from Defendants, jointly and severally, liquidated (double) damages in the amount of Plaintiffs' respective untimely paid wages, as provided by the NYLL for wage violations, as well as compensatory damages for bank fees paid by Plaintiffs, interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (Section 1981 – Race Discrimination and Hostile Work Environment)

115.    Plaintiff Lopez realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

116.    In violation of 42 U.S.C. § 1981, Defendants intentionally and willfully targeted and discriminated against Plaintiff on the basis of his race.

117.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

118.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

119.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to lost wages and damages for emotional distress, physical injuries, and medical treatment, punitive damages, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF
**(New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. – Discrimination)**

120.        Plaintiff Lopez realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

121.        In violation of the NYSHRL, Defendants intentionally discriminated against Plaintiff on the basis of his race.

122.        Defendants' discrimination was sufficiently severe so as to affect the terms of Plaintiff's employment.

123.        Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

124.        As a direct and proximate consequence of Defendants' discrimination against Plaintiff, he has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

125.        As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## TENTH CLAIM FOR RELIEF
**(New York City Human Rights Law ("NYCHRL") – Discrimination)**

126.        Plaintiff Lopez realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

127.        In violation of the NYCHRL, Defendants discriminated against Plaintiff on the basis of his race.

128.        As a direct and proximate consequence of Defendants' discrimination against Plaintiff, he has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

129.        As a direct and proximate consequence of Defendants' discrimination against Plaintiff, he has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

130.        As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## ELEVENTH CLAIM FOR RELIEF
### (NYSRL – N.Y. Exec. Law § 296(6) – Aiding and Abetting Discrimination)

131.        Plaintiff Lopez realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

132.        In violation of the NYSHRL, Defendants Patrizio Siddu and Enzo Pezone aided and abetted discrimination and retaliation against Plaintiff on the basis of his race.

133.        As a direct and proximate result of Defendants aiding and abetting discrimination and retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

134.        As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but

not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

135.        Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

136.        As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## TWELTH CLAIM FOR RELIEF
### (NYCHRL –§ 8-107(6) – Aiding and Abetting Discrimination)

137.        Plaintiff Lopez realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

138.        In violation of the NYCHRL, Defendants Patrizio Siddu and Enzo Pezone aided and abetted discrimination and retaliation against Plaintiff on the basis of his race

139.        As a direct and proximate result of Defendants' aiding and abetting discrimination and retaliation against Plaintiff, he has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

140.        As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

141.        Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

142.          As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs and members of the Class, prays for relief as follows:

A.     Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.     Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.     Designation of this action as a class action pursuant to F.R.C.P. 23.

D.     Designation of Plaintiffs as Representatives of the Class.

E.     An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F.     Penalties available under applicable laws;

G.     Costs of action incurred herein, including expert fees;

H.     Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

I.     Pre-judgment and post-judgment interest, as provided by law; and

J.      Such other and further legal and equitable relief as this Court deems necessary, just

and proper.


Dated:  New York, New York           Respectfully submitted,
        October 28, 2021
                                     JOSEPH & KIRSCHENBAUM LLP


                                     By: */s/ D. Maimon Kirschenbaum*
                                         D. Maimon Kirschenbaum
                                         Josef Nussbaum
                                         32 Broadway, Suite 601
                                         New York, NY 10004
                                         Tel: (212) 688-5640
                                         Fax: (212) 688-2548

                                     *Attorneys for Named Plaintiffs, proposed*
                                     *FLSA Collective Plaintiffs, and proposed*
                                     *Class*



## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to

which they have a right to jury trial.