UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS LOPEZ, a/k/a NERI LOPEZ, WILLIAM RAMONES, and JORGE MOLINA, on behalf of themselves and others similarly situated,<br><br>            Plaintiff,<br>v.<br><br>P E C GROUP LTD, d/b/a PEPOLINO RISTORANTE ITALIANO (a/k/a PEPOLINO), PATRIZIO SIDDU, and ENZO PEZONE,<br><br>            Defendants. | 1:21-CV-8806-ER |

# DECLARATION OF JOSEF NUSSBAUM

I, Josef Nussbaum, under penalty of perjury, affirm as follows:

1. My name is Josef Nussbam, and I am a partner with Joseph & Kirschenbaum LLP ("JK"), Plaintiffs' counsel in the above-captioned matter. I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Plaintiffs' motion for preliminary approval of class action settlement.

## NATURE OF THE CLAIMS, PROCEDURAL HISTORY, DISCOVERY, AND SETTLEMENT DISCUSSIONS

**Pre-Litigation Mediation**

3. The Plaintiffs worked as service employees at Defendants' restaurant known as Pepolino located in Manhattan.

4. In July 2021, Plaintiffs engaged counsel to pursue a class action based on alleged wage and hour violations the Plaintiffs and their coworkers were purportedly subject to at Pepolino.

1

5. Prior to filing the present lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the class claims and the likelihood of class certification.

6. Plaintiffs' Counsel also performed background research regarding the assets and liabilities of the corporate Defendant and its principals, and performed an in-depth Federal and State court prior litigation search.

7. In July 2021, Class Counsel sent a demand letter and draft complaint to Defendants laying out Plaintiffs' potential claims and suggesting the Parties participate in prelitigation settlement discussions prior to engaging in litigation.

8. On July 16, 2021, the Parties executed a class-wide tolling agreement whereby the statute of limitations would not run as to any class members, to allow settlement discussions to commence without prejudice to Plaintiffs and putative Class Members.

9. Thereafter, the Parties participated in numerous telephone calls and e-mail correspondence to discuss the merits of and defenses to Plaintiffs' claims and the possibility of settlement.

10. The Parties agreed to attend class-wide mediation in this matter at JAMS before Stephen Sonnenberg, an experienced wage and hour and class action employment mediator.

11. In preparation for mediation, Defendants produced an expansive record of relevant documents, including, but not limited to, sample payroll records that indicated Defendants companywide payroll practices.

12. These documents were sufficiently comprehensive to allow the Parties to analyze the strengths and weaknesses of the alleged claims as well as the full scope of the potential damages if Plaintiffs and a potential class were successful on their claims.

13. The Parties attended a full day mediation with Mr. Sonnenberg on October 25, 2021.

14. While the settlement negotiations were ultimately unsuccessful, the Parties made significant headway in narrowing the gap between each side's respective settlement positions.

15. At the conclusion of the mediation, the Parties agreed that they would revisit the settlement negotiations after Plaintiffs filed a complaint and the Parties completed the formal discovery process.

**The Complaint And Counterclaims**

16. On October 28, 2021, Plaintiffs filed a complaint against Defendants on behalf of themselves and a putative class of similarly situated service employees, alleging that Defendants (1) violated the FLSA and NYLL by failing to pay them for all overtime hours worked and/or paying them the incorrect overtime rate; (2) violated the NYLL and related regulations by paying them pursuant to a tip credit without providing the requisite written notice of the tip credit; (3) violated the NYLL and related regulations by paying them pursuant to a tip credit when they spent more than 2 hours or 20% of their shifts performing non-tipped sidework; (4) failed to pay the New York spread of hours premium when their shifts lasted longer than 10 hours; (5) violated the FLSA and NYLL by including managerial employees and/or non-service employees in the restaurant's tip pool; (6) failed to provide the wage statements and wage notices required under N.Y. Lab. L. § 195; (7) failed to pay them on a weekly basis, in violation of N.Y. Lab. L. § 191, which requires employers to pay "manual workers" on a weekly basis. In addition, Plaintiff Carlos Lopez alleged that Defendants discriminated against him based on his race and/or national origin.

17. On January 3, 2022, Defendants asserted counterclaims against Plaintiff Lopez for conversion, money had and received, and unjust enrichment.

**Plaintiffs' Claims**

18. Plaintiffs' NYLL minimum wage claim is based on Defendants' use of the tip credit to pay service employees. Plaintiffs allege that Defendants were not entitled to use the tip credit because Defendants (1) did not provide written notice of the tip credit to employees and (2) required service employees to spend at least two hours or 20% of their shifts performing non-tipped work such as cleaning menus, refiling sugar and salt shakers, cleaning silverware and glassware, setting tables, folding napkins, and other side work.

19. With respect to Plaintiffs' overtime claims, they allege both that Defendants failed to pay them for all overtime hours worked and that when Defendants paid service employees for overtime hours, they paid less than the required rate.

20. Plaintiffs further claim that Defendants never paid service employees spread of hours compensation when their workdays lasted longer than 10 hours, in violation of N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

21. Plaintiffs also contend that Defendants' tip pool violated N.Y. Lab. L. § 196-d and the FLSA because it included managerial employees and employees whose primary responsibilities were cleaning and polishing dishes or expediting food orders and therefore did not perform direct customer service.

22. In addition, for much of the statute of limitations period, Defendants paid service employees on a biweekly basis. Plaintiffs contend that service employees were manual workers as defined in the New York Labor Law, and therefore this violated N.Y. Lab. L. § 191(1)(a)(i).

23. Finally, Plaintiffs allege Defendants did not provide service employees with wage notices upon hire, in violation of N.Y. Lab. L. § 195(1), and that the wage statements Defendants provided did not contain all of the information required under N.Y. Lab. L. § 195(3).

**Discovery And Settlement Discussions**

24. The parties engaged in full discovery before reaching a settlement.

25. All parties responded to document requests and interrogatories and produced documents. Defendants' production included pay records, time records, and tip sheets. Defendants also produced arbitration agreements that their employees signed after this action was commenced, as well as declarations from then-current employees disclaiming any wage and hour violations.

26. All of the Plaintiffs and Individual Defendants were deposed, with Defendant Siddu also serving as the representative of the Corporate Defendant under Rule 30(b)(6).

27. Following the completion of discovery, Plaintiffs submitted premotion letters concerning their anticipated motions for class certification and summary judgment, and a briefing schedule was set for those motion.

28. Prior to engaging in motion practice, the Parties revisited their earlier settlement negotiations.

29. Defendants provided Plaintiffs with copies of the three years of their tax returns. after reviewing these records, it became clear to counsel that there is a strong likelihood that the restaurant would not survive if it had to pay a mid-seven figure judgment.

30. This is especially true considering the impact of the COVID-19 pandemic on the New York City restaurant industry in the last two and half years. Thus, a large a wage and hour judgment could very well be the straw that breaks the restaurant's back and puts it out of business to the detriment of the Class Members.

31. After much back and forth between the attorneys, the Parties were able to reach a settlement in principle to settle the putative class's claims for a maximum gross settlement amount of $965,000.

32. Plaintiffs believe this settlement amount is highly favorable to the Class in light of the significant risks Plaintiffs faced in this litigation.

## CERTIFICATION OF THE CLASS

33. The proposed Class has approximately 100 members.

34. The Plaintiffs have fairly and adequately represented the interests of all Class Members and have no known conflicts with Class Members.

35. The Plaintiffs have no character flaws that would prevent them from serving as class representatives, and they have shown their dedication to the lawsuit by providing critical facts to counsel and participating in discovery. These individuals expended significant time providing critical facts to counsel, responding to discovery requests, and being deposed.

36. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

37. JK has done substantial work identifying, investigating, prosecuting, and settling the Class's claims. JK has engaged in formal and informal discovery and successfully negotiated a settlement.

38. D. Maimon Kirschenbaum manages the firm.

39. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments representing food service workers throughout New York City, Mr. Kirschenbaum became a member/partner of the firm in May of 2007.

40. Mr. Kirschenbaum and JK have been approved numerous times as lead or co-lead counsel pursuant to Rule 23.

41. I was the principal attorney on this case. I graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011. In January 2020, I was named partner of the firm.

42. The majority of my personal current docket consists of class and collective action lawsuits against New York employers for wage and hour violations.

43. Since joining JK, I have served as lead or co-lead counsel on numerous class and collective actions, and my efforts have resulted in the recovery of over $40 million for New York workers.

44. JK has been appointed lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in actions in federal and state courts. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Argudo v. Parea Grp. LLC,* U.S. Dist. LEXIS 163249 (S.D.N.Y. Sept. 24, 2019) (certifying class and appointing JK class counsel); *Zivkovic v. Laura Christy LL*, 329 F.R.D. 61 (S.D.N.Y. 2018) (same); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) (certifying class and appointing JK co-class counsel); *Schear v. Food Scope Am., Inc.,* 297 F.D.R. 114 (S.D.N.Y. Jan. 8, 2014) (conditionally certifying collective and class and appointing JK class counsel); *Megason v. Starjam Rest. Corp.*, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014) (certifying class and appointing JK class counsel)); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (granting final approval of settlement in wage and hour class action brought against a restaurant where JK was co-class counsel); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (same); *Spicer v. Pier Sixty LLC*,

269 F.R.D. 321 (S.D.N.Y. 2010) (certifying class and appointing JK class counsel); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification of settlement class in wage and hour class action); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective action); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007) (conditionally certifying FLSA collective action); *Kato v. Masa NY, LLC*, Index No. 09-104578 (S. Ct., N.Y. County Jan. 28, 2010) (certifying class and appointing JK class counsel).

45. As a result of these lawsuits, we have recovered millions of dollars for thousands of New York food service workers. Some of these have been the largest settlements of their kind in New York City. *E.g.*, *Zivkovic v. Laura Christy, LLC*, Case No. 17 CV 553 (S.D.N.Y. June 22, 2022) (Dkt. No. 324) (entering post-trial judgment of $5,092,017.85); *Capsolas*, 2012 U.S. Dist. LEXIS 144651 (granting final approval of $5,250,000 settlement); *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of $1,975,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); *Brinker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug.

13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

46. Several of our cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See, e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

## EXHIBITS

47. Attached hereto as Exhibit 1 is a true and correct copy of the parties' Settlement Agreement and Release in this action.

48. Attached hereto as Exhibit 2 is a proposed order.

Dated: New York, NY
September 20, 2022

                                                                                                                 s/ *Josef Nussbaum*
                                                                                                                  Josef Nussbaum