UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS LOPEZ, a/k/a NERI LOPEZ, WILLIAM RAMONES, and JORGE MOLINA, on behalf of themselves and others similarly situated,<br><br>            Plaintiff,<br>v.<br><br>P E C GROUP LTD, d/b/a PEPOLINO RISTORANTE ITALIANO (a/k/a PEPOLINO), PATRIZIO SIDDU, and ENZO PEZONE,<br><br>            Defendants. | 1:21-CV-8806-ER |

I, Josef Nussbaum, under penalty of perjury, affirm as follows:

1. My name is Josef Nussbaum, and I am a partner with Joseph & Kirschenbaum LLP ("JK"), class counsel in the above-captioned matter. I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Plaintiffs' motion for final approval of class action settlement.

3. Plaintiffs'/Class Representatives' motion seeks final approval of a settlement that will resolve all claims asserted in the instant action.

**NATURE OF THE CLAIMS, PROCEDURAL HISTORY, DISCOVERY, AND SETTLEMENT DISCUSSIONS**

4. Plaintiffs worked as food-service employees at Defendants' restaurant known as Pepolino located in Manhattan.

5. In July 2021, Plaintiffs engaged counsel to pursue a class action based on alleged wage and hour violations the Plaintiffs and their coworkers were purportedly subject to at Pepolino.

6. Prior to filing the lawsuit, Plaintiffs' Counsel conducted a thorough investigation into the merits of the class claims and the likelihood of class certification.

7. Plaintiffs' Counsel also performed background research regarding the assets and liabilities of the corporate Defendant and its principals, and performed an in-depth Federal and State court prior litigation search.

8. In July 2021, Class Counsel sent a demand letter and draft complaint to Defendants laying out Plaintiffs' potential claims and suggesting the Parties participate in prelitigation settlement discussions prior to engaging in litigation.

9. On July 16, 2021, the Parties executed a class-wide tolling agreement whereby the statute of limitations would not run as to any class members, to allow settlement discussions to commence without prejudice to Plaintiffs and putative Class Members.

10. Thereafter, the Parties participated in numerous telephone calls and e-mail correspondence to discuss the merits of and defenses to Plaintiffs' claims and the possibility of settlement.

11. The Parties agreed to attend mediation in this matter at JAMS before Stephen Sonnenberg, an experienced wage and hour and class action employment mediator.

12. In preparation for mediation, Defendants produced an expansive record of relevant documents, including, but not limited to, sample payroll records that indicated Defendants companywide payroll practices.

13. These documents were sufficiently comprehensive to allow the Parties to analyze the strengths and weaknesses of the alleged claims as well as the full scope of the potential damages if Plaintiffs and a class were successful on their claims.

14.     The Parties attended a full day mediation with Mr. Sonnenberg on October 25, 2021.

15.     While the settlement negotiations were ultimately unsuccessful, the Parties made significant headway in narrowing the gap between each side's respective settlement positions.

16.     At the conclusion of the mediation, the Parties agreed that they would revisit the settlement negotiations after Plaintiffs filed a complaint and the Parties completed formal discovery.

**The Complaint And Counterclaims**

17.     On October 28, 2021, Plaintiffs filed a complaint against Defendants on behalf of themselves and a putative class of similarly situated service employees, alleging that Defendants (1) violated the FLSA and NYLL by failing to pay them for all overtime hours worked and/or paying them the incorrect overtime rate; (2) violated the NYLL and related regulations by paying them pursuant to a tip credit without providing the requisite written notice of the tip credit; (3) violated the NYLL by paying them pursuant to a tip credit when they spent more than 2 hours or 20% of their shifts performing non-tipped side-work; (4) failed to pay the New York spread of hours premium when their shifts lasted longer than 10 hours; (5) violated the FLSA and NYLL by including managerial employees and/or non-service employees in the restaurant's tip pool; (6) failed to provide the wage statements and wage notices required under N.Y. Lab. L. § 195; (7) failed to pay them on a weekly basis, in violation of N.Y. Lab. L. § 191, which requires employers to pay "manual workers" weekly.[1]  Dkt. no. 1.

---

[1] Plaintiff Carlos Lopez also alleged that Defendants discriminated against him based on his race and/or national origin.  Dkt. No. 1.  On January 3, 2022, Defendants asserted counterclaims against Plaintiff Lopez for conversion, money had and received, and unjust enrichment.  Dkt. No. 7.

**Plaintiffs' Claims**

18. Defendants own/operate Pepolino, a restaurant in New York City.

19. Named Plaintiffs worked at Pepolino as food-service employees.

20. Plaintiffs' NYLL minimum wage claim is based on Defendants' use of the tip credit to pay service employees. Plaintiffs allege that Defendants were not entitled to use the tip credit because Defendants (1) did not provide written notice of the tip credit to employees, and (2) required service employees to spend at least two hours or 20% of their shifts performing non-tipped work such as cleaning menus, refilling sugar and saltshakers, cleaning silverware and glassware, setting tables, folding napkins, and other side work.

21. Thus, Plaintiffs contend that Defendants' use of the tip credit was unlawful under the relevant regulations. N.Y. Comp. Codes R. & Regs. tit. 12 ("NYCRR"), §§ 146-1.3, 146-2.2, 146-3.4.

22. With respect to Plaintiffs' overtime claims, they allege both that Defendants failed to pay them for all overtime hours worked and that when Defendants paid them for overtime hours, they paid less than the required rate.

23. Plaintiffs further claim that Defendants never paid service employees spread of hours compensation when their workdays lasted longer than 10 hours, in violation of NYCRR § 146-1.6.

24. Plaintiffs also contend that Defendants' tip pool violated N.Y. Lab. L. § 196-d and the FLSA because it included managerial employees and employees whose primary responsibilities were cleaning and polishing dishes or expediting food orders and therefore did not perform direct customer service (hereinafter "Tip Ineligible Employees").

4

25. In addition, for much of the statute of limitations period, Defendants paid service employees on a biweekly basis. Plaintiffs contend that they were manual workers as defined in the NYLL, and therefore this violated N.Y. Lab. L. § 191(1)(a)(i).

26. Finally, Plaintiffs allege Defendants did not provide service employees with wage notices upon hire, in violation of N.Y. Lab. L. § 195(1), and that the wage statements Defendants provided did not contain all of the information required under N.Y. Lab. L. § 195(3).

27. Defendants deny all of Plaintiffs' allegations and maintain that their compensation practices were lawful.

**Discovery and Settlement**

28. The Parties completed fact discovery before reaching a settlement.

29. All Parties responded to document requests and interrogatories and produced documents. Defendants' production included pay records, time records, and tip sheets. Defendants also produced arbitration agreements that their employees signed after this action was commenced, as well as declarations from then-current employees disclaiming there were any wage and hour violations at Pepolino.[2]

30. All of the Plaintiffs and individual Defendants were deposed, with Defendant Siddu serving as the representative of the corporate Defendant under Rule 30(b)(6).

31. Following the completion of discovery, Plaintiffs submitted premotion letters concerning their anticipated motions for class certification and summary judgment, and the Court set a briefing schedule for those motions.

32. Prior to engaging in motion practice, the Parties revisited their settlement negotiations.

---

[2] Defendants never sought to enforce the arbitration agreements apparently because they were all executed after the litigation was filed.

33. Defendants provided Plaintiffs with copies of the three years of their tax returns. After reviewing these records, it became clear to counsel that there is a strong likelihood that the restaurant would not survive if it had to pay a mid-seven figure judgment.

34. This is especially true considering the impact of the COVID-19 pandemic on the New York City restaurant industry in the last two and half years. Thus, a large a wage and hour judgment could very well be the straw that breaks the restaurant's back and puts it out of business to the detriment of the Class Members.

35. After much back and forth between the Parties' respective attorneys, in August 2022, the Parties reached a settlement in principle to settle the putative class's claims for a maximum settlement amount of $965,000.

36. Plaintiffs believe this settlement amount is highly favorable to the Class in light of the significant risks Plaintiffs faced in this litigation.

## SUMMARY OF SETTLEMENT TERMS

**Settlement Fund**

37. The Settlement Agreement (attached as "Exhibit 1," hereinafter the "Agreement") provides that Defendants shall pay a maximum settlement amount of Nine Hundred and Sixty-Five Thousand Dollars ($965,000.00) (the "Settlement Amount"). Agreement ¶¶ 1.18, 3.1(A). The Settlement Amount includes payments to Class Members, attorneys' fees and costs, service awards to the Plaintiffs, and settlement administration costs. *Id*. at ¶¶ 3.1(A), 3.2, 3.3, 3.4.

38. The Net Settlement Fund is the remainder of the Settlement Amount after deductions for Court-approved attorneys' fees and costs, Court-approved service awards, and settlement administration costs. *Id*. at ¶ 1.23. Plaintiffs' counsel will apply for no more than one-

third of the Settlement Amount as attorneys' fees and recovery of their litigation costs. *Id*. at ¶ 3.2.

**Allocation Formula**

39.     85% of the Net Settlement Fund will be allocated among all Class Members on a *pro rata* basis according to the number of hours Defendants paid them at the tip credit from July 15, 2015 to September 20, 2022. *Id*. at ¶ 3.4(A)(2)(a). The remaining 15% of the Net Settlement Fund will be allocated among all Class Members on a *pro rata* basis according to the amount of credit card tips they received from July 15, 2015 to September 20, 2022. *Id*. at ¶ 3.4(A)(2)(b). Notwithstanding these formulas, no Class Member will be allocated less than $150 from the Net Settlement Fund. *Id*. at ¶ 3.4(A)(1). Class Members must submit a Claim Form in order to receive their allocated share of the Net Settlement Fund. *Id*. at ¶ 3.4(A)(4). Claim forms must be submitted within 60 days of when the Claims Administrator mails notice of the settlement. *Id*. at ¶¶ 1.4, 1.5.

40.     Upon an Order finally approving the settlement, Defendants will make a single settlement payment by the later of 30 days after entry of a final approval order or July 25, 2023. *Id*. at ¶ 3.1(B). The Claims Administrator will issue settlement checks to Claimants within 15 days of receiving payment of the Settlement Amount from Defendants. *Id*. at ¶ 3.4(D). Class Members will have 90 calendar days from when the Settlement Checks are issued to redeem their settlement payments, after which the checks will be void. Class Members can request new Settlement Checks for an additional 90 days after the void date, *i.e.*, up to 180 days from when the Settlement Checks are initially issued. *Id.* at ¶ 3.4(F). Any money still remaining in the Settlement Fund on the later of one hundred eighty-one (181) days after the Settlement Checks are issued or forty-six (46) days after the last reissued settlement check is issued shall revert back to Defendants. *Id*. at ¶ 3.4(G).

**The Release**

41. In return for the above consideration, all Class Members who do not opt out of the Class will release all wage and hour claims against Defendants under state law. *Id*. at ¶ 4.1. All Class Members who cash their settlement checks will release all FLSA claims against Defendants. *Id*. at ¶ 4.2. The Settlement Agreement does not release the FLSA claims of any Class Members who do not endorse their settlement checks. *Id*. at ¶¶ 4.1, 4.2.

**Class Members' Response To Settlement**

42. Pursuant to the Court's January 19, 2023 Order, Rust Consulting, the Claims Administrator, mailed the notice and claim forms (collectively, the "Class Notice") to 123 Class Members included on the class list provided to the Claims Administrator by Defendants.

43. The time has expired for all Class Members to opt out and/or object under the Agreement.

44. The claims administrator has informed us that no Class Members have objected to or opted out of the settlement.

45. In fact, Class Members are estimated to have claimed roughly $441,741 of an estimated $612,341 available in the Net Settlement Fund, or more than 72% of the Settlement Fund.

46. Thus, there was clear approval of the settlement by the Class Members.

**SERVICE AWARDS**

47. The Named Plaintiffs expended considerable time and effort to assist Class Counsel with the case.

48. They initiated this action and participated in the mediation process.

49. They regularly communicated with Class Counsel about the case, including providing Class Counsel with documents, reviewing documents, and explaining relevant and necessary factual information to Class Counsel.

50. The Named Plaintiffs provided responses to Defendants' discovery requests and were deposed.

51. Thus, the Named Plaintiffs' assistance was crucial in the prosecution and proposed resolution of the case.

**SETTLEMENT CLAIMS ADMINISTRATOR FEES**

52. Pursuant to the terms of the Settlement Agreement, the Parties retained Rust Consulting, Inc. ("Rust") to administer the settlement.

53. Rust estimates that the total settlement administration costs, including fees incurred and future costs for completion of the administration of the settlement payments, are estimated to total approximately $10,227.

**ATTORNEYS' FEES AND COSTS**

54. J&K is a law firm dealing almost exclusively with employee rights.

55. Specifically, the firm represents employees in wage/hour and employment discrimination matters. The firm specializes in wage and hour litigation against food service establishments.

56. D. Maimon Kirschenbaum ("DMK") manages the firm's wage and hour department.

57. Since graduating Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at J&K. As a result of his accomplishments representing food service workers

throughout New York City, Mr. Kirschenbaum became a member/partner of the firm in May of 2007.

58. A large part of Mr. Kirschenbaum's personal current docket involves class action lawsuits against New York City restaurants for wage and hour violations.

59. Mr. Kirschenbaum and J&K have been approved numerous times as lead or co-lead counsel pursuant to Fed. R. Civ. P. Rule 23 and CPLR § 900 et seq.

60. The undersigned ("JN") was the primary attorney managing this case. I received my B.C.L./LL.B. from McGill University's Faculty of Law in 2009 and joined J&K in June 2011. I was named partner at the firm in the January 2020.

61. The majority of my current docket involves wage and hour class action lawsuits. I have served with Mr. Kirschenbaum as co-lead counsel on many cases that have been certified as collective and/or class actions.

62. Denise A. Schulman ("DAS") received her J.D. from New York University School of Law in 2008 and joined J&K in 2009. She is now a partner at the firm.

63. The primary paralegals who worked on this case were Evelyn Velasaca and Jorge Aguirre.

64. Ms. Velesaca (identified as "EV" in some of the time records) has worked as an administrative assistant/paralegal at J&K since January 2022. Last year, Ms. Velasaca received her B.A. in political science, minor in economics & certificate in business studies from Hunter College in Manhattan. Prior to joining J&K, Ms. Velasaca worked at NYC Department of Social Services and volunteered at Volunteers of Legal Service in Manhattan.

65. Jorge Aguirre (identified as "JA" in some of the time records) has worked as paralegal at J&K since early 2023. He has taken paralegal courses at the University of Auburn and

accounting class at College of Southern Nevada. Prior to joining J&K, Mr. Aguirre worked as a judicial assistant to a judge in Phoenix, AZ.

66. Over the last several years, J&K's wage and hour practice has filed dozens of class/collective actions on behalf of people employed in the New York food service industry, in addition to a significant number of individual actions.

67. J&K has been appointed lead or co-lead class counsel (or counsel for representative plaintiffs in FLSA collective actions) in actions in federal and state courts. *E.g., Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011) (affirming district court's certification of Rule 23 class of restaurant servers with J&K as class counsel); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (granting final approval of settlement in wage and hour class action brought against a restaurant where J&K was co-class counsel); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (same); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) (certifying class and appointing J&K class counsel); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification of settlement class in wage and hour class action); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective action); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 18 (S.D.N.Y. Oct. 5, 2007) (conditionally certifying FLSA collective action); *Kato v. Masa NY, LLC*, Index No. 09-104578 (S. Ct., N.Y. County Jan. 28, 2010) (certifying class and appointing J&K class counsel); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427 (S.D.N.Y. Sep. 28, 2015) (same); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014) (same); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61

(S.D.N.Y. 2018) (same). Attached hereto as "Exhibit 2" is a list of cases that J&K has been appointed as class/collective counsel.

68. As a result of these lawsuits, we have recovered over $150 million for thousands of New York food service workers. Some of these have been the largest settlements of their kind in New York City. *E.g., Capsolas*, 2012 U.S. Dist. LEXIS 144651; *Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012) (granting final approval of $8.5 million settlement); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520, 2012 U.S. Dist. LEXIS 25060 (S.D.N.Y. Feb. 24, 2012) (granting final approval of $4,750,000 settlement); Argudo v. Parea Group, LLC, et al, 18 CV 678 at Dkt No. 270 (approving $2.5 class action settlement on behalf of food-service employees); *Alderman v. 21 Club Inc.*, No. 09 Civ. 2418 (S.D.N.Y. Jan. 27, 2012) (granting final approval of $2,000,000 settlement); *In re Milos Litig.*, No. 08 Civ. 6666, 2011 U.S. Dist. LEXIS 138473 (S.D.N.Y. Sept. 8, 2011) (granting final approval of $1,975,000 settlement); *Ahad v. BLT Steak LLC*, No. 08 Civ. 5528 (S.D.N.Y. Aug. 13, 2010) (approving $925,000 settlement); Bric*ker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of $900,000 settlement); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of $2,500,000 settlement).

69. Several of our cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See, e.g., Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht*

*Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

70. In addition, our firm recently successfully prosecuted one the largest (if not the largest) class action wage and hour litigation in this Circuit. *See Zivkovic v. Laura Christy, LLC*, 17 CV 553 (S.D.N.Y. June 22, 2023) (securing a more than $5.5 million verdict for a class of food-service employees.)

71. Based on Class Counsel's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed Settlement is clearly in the best interests of the Class.

72. J&K's activities in prosecuting these claims included, but were not limited to: interviewing the Plaintiffs and their coworkers; reviewing hundreds of payroll documents; taking and defending multiple depositions; negotiating the settlement; drafting the settlement agreement; drafting a motion for preliminary approval of the settlement; responding to numerous Class Member inquiries during the settlement process. We also kept in regular contact with Plaintiffs and Class Members regarding the status of the case.

73. J&K has spent significant attorney and paralegal time litigating this case, including more than 215 attorney hours and 50 paralegal hours.

74. We anticipate expending more time after the date of this motion in appearing at the Fairness Hearing and administering the Settlement, which we expect will require a substantial commitment of time. Class Counsel have already expended significant time communicating with Class Members about the settlement and will continue to do so as the settlement administration continues.

75. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.

76. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time for time spent by J&K on this matter.

77. The three attorneys who worked on this case (all partners at the firm) seek an hourly rate of $500. Courts have found a partner rate of $500 listed below to be reasonable in wage and hour cases. *See, e.g., Zivkovic v. Laura Christy, LLC*, 17 Civ. 553 (S.D.N.Y. June 25, 2022) at 17:11-22 ("As a result, I calculate plaintiffs' attorneys' fees as follows: Mr. Kirschenbaum, a rate of $500 per hour […]. Mr. Nussbaum, who's a partner, $500 per hour. […]. Ms. Schulman at a rate of $500 per hour […].") (Woods J.) (transcript attached as **Ex. F**); *see also, e.g., Gallegos v. New Oceana Rest. Corp.*, No. 11 Civ. 8802 (S.D.N.Y. June 28, 2013) (referring to rates of $500 for Maimon Kirschenbaum as "reasonable").

78. Courts have also found paralegal rates of $125 per hour to be reasonable. *See, e.g., Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 U.S. Dist. LEXIS 85873 (S.D.N.Y. July 1, 2015) (finding, in a restaurant employees class action settlement that was approved more than eight years ago, rates of $125 per hour for J&K paralegals to be reasonable).

79. Below is a chart of the time billed and rates sought by J&K in this case:

| Biller | Hours | Requested Rate | Total |
|---|---|---|---|
| Maimon Kirschenbaum | 14.6 | $500 | $7,300 |
| Denise Schulman | 22.9 | $500 | $11,400 |
| Josef Nussbaum | 178.2 | $500 | $89,100 |
| Paralegals | 50.3 | $125 | $6,287.50 |
| | | **Totals:** | **$114,087.50** |

80. J&K entered into a retainer agreement with the Named Plaintiffs, which provides for counsel to receive 33 1/3% of any recovery. Class Counsel undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of substantial risk.

81. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Indeed, the facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. If this case had been dismissed on summary judgment, trial or appeal, Class Counsel would have lost all time, efforts and expenses put into this matter.

82. Class Counsel kept Plaintiffs and Class Members informed of and involved in the action through regular contact with them.

83. To date, Class Counsel have worked for almost two years without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

84. No Class Member has raised objections to the attorneys' fees as set forth in the Notice of Settlement.

85. Class Counsel incurred the following costs in litigating this case:

| Date | Vendor | Cost | Description |
|---|---|---|---|
| 07/08/21 | FEDEX | $29.03 | Draft Complaint and letter sent to Pepolino owners. |
| 08/31/21 | JAMS | $4,160.64 | Mediation Fee |

| 10/28/21 | USDC New York | $402.00 | Southern District Court filing fee re Complaint. |
|---|---|---|---|
| 07/15/22 | Veritext | $2,343.95 | Deposition for witness Patrizio Siddu |
| 11/28/22 | USPS | $10.20 | Send courtesy copy to Judge Ramos |
| 6/23/22 | Veritext | $1,281.60 | Deposition of Perone (6/7/22) |
| 6/20/22 | Veritext | $420.00 | Deposition cancellation fee (6/20/22) |
| 4/17/23 | USPS | $52.20 | Postage for Claims Notices |
| | **TOTALS:** | **$8,699.62** | |

## EXHIBITS

86. Attached as **Exhibit 1** is a true and correct copy of the fully executed Agreement.

87. Attached as **Exhibit 2** is a true and correct copy of J&K's Background and Experience in class/collective actions.

88. Attached as **Exhibit 3** is a true and correct copy of a transcript from a hearing before Judge Richard J. Sullivan in *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008-RJS on December 22, 2015.

89. Attached as **Exhibit 4** are J&K's attorney time records.

90. Attached as **Exhibit 5** are J&K's paralegal time records.

91. Attached as **Exhibit 6** is a true and correct copy of Plaintiff's Proposed Order granting Plaintiff's Unopposed Motion for Approval of Class Action Settlement.

\* \* \*

Dated: New York, New York
May 9, 2023

**JOSEPH & KIRSCHENBAUM LLP**

By: *s/ Josef Nussbaum*
Josef Nussbaum
32 Broadway, Suite 601
NYC, NY 10004
Tel: 212.688.5640
Fax: 212.688.2548
jnussbaum@jk-llp.com